UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WEBSTER RASHADA, | ) |
| Plaintiff, | ) Case No. 1:23-cv-00526 |
| v. | ) Honorable Sally J. Berens |
| OFFICER [UNKNOWN] FLEGEL, *et al.*, | ) |
| Defendants. | ) |

**BRIEF IN SUPPORT OF PLAINTIFF WEBSTER RASHADA'S MOTION FOR EXTENSION OF TIME**

Plaintiff Webster Rashada's motion for extension of time under Federal Rule of Appellate Procedure 4 is timely and meritorious. He respectfully requests that the Court grant it.

**INTRODUCTION**

On May 19, 2023, Mr. Rashada filed a pro se civil rights complaint against prison staff at Ionia Correctional Facility. (ECF No. 1, at 1.) There, two correctional officers injured Mr. Rashada's hand in retaliation for his filing grievances against their coworkers. (*Id.* at 4.) His injuries were severe, requiring medical attention on three separate occasions, including one appointment eight weeks after the confrontation. (*See* ECF Nos. 1-10, 1-11, and 1-12.)

This Court entered judgment against Mr. Rashada and dismissed his complaint with prejudice on June 1. (*See* ECF No. 8.) In the written opinion laying out its reasons for doing so, the Court concluded that Mr. Rashada might have good faith arguments to raise on appeal. (*See* ECF No. 7, at 8.) But for a majority of the 30 days in which Mr. Rashada could have timely noticed his appeal, he was in observational housing at Marquette Branch Prison with no access to phone calls or mail. So he missed repeated outreach about his upcoming deadline from counsel.

Mr. Rashada, then, has good cause for missing that deadline. Accordingly, he requests an extension of time to file the good faith appeal that this Court contemplated in its reasoned opinion.

I. **Mr. Rashada's Motion Is Two Weeks Early.**

Mr. Rashada had 30 days from the entry of this Court's judgment on June 1, 2023, to appeal as of right. *See* 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A). The last day he could do so was July 1. *See* Fed. R. App. P. 26(a)(1). This was a Saturday, so the Rules gave Mr. Rashada until the next business day, Monday, July 3. *See* Fed. R. App. P. 26(a)(1)(C). He did not file a notice of appeal on or before that date.

But the United States Code and Federal Rules empower litigants who miss their initial deadlines, like Mr. Rashada, to request extensions. These motions must be filed within 30 days of the expiration of the original deadline. 28 U.S.C. § 2107(c); Fed. R. App. P. 4(a)(5)(A)(i). Mr. Rashada's motion for an extension of time, then, is due on August 2. *See* Fed. R. App. P. 26(a)(1). Accordingly, his motion is better than timely—it is two weeks early.

II. **Mr. Rashada Has Shown Good Cause For An Extension, And Any Neglect On His Part Is Excusable.**

District courts may extend the time that parties have to file notices of appeal upon a finding of either good cause or excusable neglect. *See* 28 U.S.C. § 2107(c); Fed. R. App. P. 4(a)(5)(1)(ii). "Excusable neglect and good cause are different concepts[.]" *Mizori v. United States*, 23 F.4th 702, 705 (6th Cir. 2022). "Good cause will be found where forces beyond the control of the appellant prevented [him] from filing a timely notice of appeal." *Nicholson v. City of Warren*, 467 F.3d 525, 526 (6th Cir. 2006). But where "the need for an extension is [] occasioned by something within the control of the movant," "[t]he excusable neglect standard applies." *See* Fed. R. App. P. 4(a)(5)(A)(ii) advisory committee's note to 2002 amendment. If the Court agrees that Mr. Rashada has shown either good cause or excusable neglect, it should grant his motion.

### a. **Mr. Rashada's Placement In Observational Housing, Independent Of Or In Combination With Actions By Prison Employees That Hindered His Appeal, Provides Good Cause For An Extension.**

Staff at Marquette Branch Prison placed Mr. Rashada in observational housing for at least 16 days (more than half of the time he had to file a timely notice of appeal), waited 13 days to advise him of the engagement letter counsel had sent him, and declined repeatedly to help counsel schedule a phone call with Mr. Rashada. Any one of these circumstances gives Mr. Rashada good cause for missing his filing deadline. Together, they compose an overwhelming showing.

*First*, prison employees placed Mr. Rashada in observational housing for 16 or 17 days to treat him for "suicide attempts/threats of self-harm."[1] (Att. 4 at 4.) This means that Mr. Rashada was not permitted to receive phone calls or send mail for a majority of the 30 days in which he could have filed a timely notice of appeal. This is a common fact pattern, and courts routinely find that restricted access to the resources needed to prepare and file a notice of appeal constitutes good cause. *See Mizori*, 23 F.4th at 706 (unspecified amount of time in high-security Special Housing Unit, as well as denial of postage stamps and envelopes, supported finding of good cause).[2]

To be sure, there is a discrepancy as to how long Mr. Rashada was in observational housing. Mr. Rashada told counsel that prison staff placed him in observational housing on either June 13

---

[1] Counsel learned when Mr. Rashada was placed in observational housing (either June 13 or June 14), when Mr. Rashada was told about counsel's June 15 letter (June 29), and when Mr. Rashada left observational housing (June 30) on his July 13 phone call with Mr. Rashada. (Att. 1 ¶ 12.)

[2] *See also Rambo v. Nogan*, 2020 WL 8996792, at *1 (D.N.J. May 21, 2020) (inability to conduct legal research supported finding of good cause); *Momoh v. Valenzuela*, 2015 WL 13037530, at *2 (C.D. Cal. Apr. 13, 2015) (unspecified amount of time in administrative segregation supported finding of good cause); *Levesque v. Clinton County*, 2014 WL 2090803, at *2 (N.D.N.Y. May 19, 2014) (finding good cause where plaintiff was in a medical facility with no access to legal materials for the entire 30 days during which he could have timely noticed his appeal); *Scott v. Unger*, 2011 WL 971071, at *1 (W.D.N.Y. Mar. 17, 2011) (finding good cause where petitioner was confined to a Special Housing Unit for an unspecified portion of his incarceration and lacked access to legal material); *Jones v. Walsh*, 2008 WL 586270, at *1 (S.D.N.Y. Mar. 4, 2008) (finding good cause where petitioner alleged that he missed his deadline because of an unexplained "inability to access the Law Library"); *Stephanski v. Superintendent of Upstate Corr. Facility*, 2007 WL 210399, at *1–2 (W.D.N.Y. Jan 25, 2007) (unspecified amount of time in Special Housing Unit and limited access to legal library supported finding of good cause).

3

or June 14. (Att. 1 ¶ 12.) One prison employee, though, has told counsel that Mr. Rashada entered observational housing on June 19. (Att. 4 at 4.) But whether he was in observational housing for 17 days, 16 days, or 11 days is immaterial. His prolonged lack of access to the materials needed to communicate with counsel, or file a notice of appeal unassisted, constitutes good cause. *See Cobb v. Benjamin*, 2021 WL 5371559, at *2 (7th Cir. Nov. 18, 2021) (order) (receipt of the court's order 11 days after its entry, such that "more than one-third of his time to appeal had already elapsed," supported finding of good cause); *Ostuni v. Wawa's Mart*, 2013 WL 1632616, at *2 (M.D. Penn. Apr. 16, 2013) (10-day placement in medical observation supported finding of good cause).

Indeed, many courts find good cause even in instances where the movant has not alleged <u>any</u> heightened limitation on their usual level of access to the institution's law library, or other resources, at any point during the 30-day period. See *Broyles v. Roeckeman*, 2013 WL 2467710, at *2 (N.D. Ill. June 7, 2013) (finding good cause where the petitioner alleged that he had limited access to the prison law clerk and time in the law library); *Khoa Chuong Le v. Dretke*, 2004 WL 1161400, at *1 (N.D. Tax. May 21, 2004) (finding good cause where the petitioner alleged that he had limited access to the law library and needed more time to prepare his notice of appeal).

*Second*, prison officials waited 16 days to tell Mr. Rashada that he had received an engagement letter from counsel. (*See* Att. 2 at 1; Att. 1 ¶ 12.) This was more than half of his 30-day window to notice an appeal.

Counsel sent Mr. Rashada an engagement letter on June 15, 2023, for his signature. (Att. 2 at 1.) It arrived at Marquette Branch Prison the next day. (*Id.*) Prison staff read the letter and emailed counsel, advising him to mark future correspondence as "Legal Mail." (Att. 1 at 1-3.) Having read the letter, prison employees knew that Mr. Rashada only had until July 3 to file a

notice of appeal. Armed with this knowledge, they declined to tell Mr. Rashada about the letter until June 29, four days before his filing deadline. This 16-day delay is unexplained. And such a delay—caused by prison employees—supports a finding of good cause. *See Mizori*, 23 F.4th at 706 (crediting inmate's unsworn allegation that correctional officers "hindered and impeded" him from filing a notice of appeal when analyzing good cause); *Stephanski v. Superintendent of Upstate Corr. Facility*, 2007 WL 210399, at *1–2 (W.D.N.Y. Jan 25, 2007) (similar).

On June 30, the day after he learned about the engagement letter sent from counsel, Mr. Rashada left observational housing. (*See* Att. 1 ¶ 13.) He signed and mailed the engagement letter back the same day. (*See* Att. 9 at 1, 3.) In other words, once he was informed of the letter and given access to the mail, Mr. Rashada waited less than a day to accept counsel's services. *See Brown v. Dretke*, 2004 WL 1490087, at *1 (N.D. Tex. July 1, 2004) (finding good cause where the plaintiff prepared and mailed his motion for extension and notice of appeal five days after he returned to ordinary housing). It arrived on July 6, three days after his deadline had passed. (*See* Att. 1 ¶ 10.)

*Third*, counsel asked four different prison employees eight times across 12 emails to place a phone call from him to Mr. Rashada. (*See* Atts. 3–8.) Even after he had informed the institution that he was Mr. Rashada's lawyer, it still took 10 days for prison employees to schedule a phone call. (Att. 6 at 1–3.) It was only good fortune that allowed Mr. Rashada and counsel to speak on July 13.[3] (*See* Att. 1 ¶ 12.) On that call, counsel first learned many of the facts that support this motion. Acting diligently, counsel filed this motion on the fourth business day after he spoke with Mr. Rashada. *See Andrews v. Colorado*, 2009 WL 3271177, at *5 (D. Colo. Oct. 9, 2009) (finding good cause where counsel moved for an extension one week after petitioner contacted him). This

---

[3] Counsel had missed after-hours phone calls from Mr. Rashada on July 5 and July 9. (*See* Att. 1 ¶¶ 9, 11.)

5

marks a sharp contrast with the 13 days prison employees needed to tell Mr. Rashada about counsel's initial letter, or the 27 days needed to schedule a phone call.

Mr. Rashada's time in observational housing, standing alone, constitutes good cause. In addition to this hinderance, prison employees failed to advise Mr. Rashada of mail and phone calls he had received offering to help him file a notice of appeal free of charge. "The federal Constitution requires that prisoners be given substantial assistance in meeting their court deadlines." *Rogalski v. Pramstaller*, 2009 WL 1788597, at *4 n.1 (W.D. Mich. June 23, 2009) (R&R). Marquette Branch Prison fellg short of these obligations. Mr. Rashada's inability to communicate with counsel supports a finding of good cause.

### b. To The Extent Mr. Rashada Was Neglectful, This Neglect Was Excusable.

The excusable-neglect standard assumes neglect. And for the reasons given above, Mr. Rashada was not neglectful; forces outside of his control caused his missed deadline. But if the Court reasons that Mr. Rashada was at fault for his missed deadline, it should find that Mr. Rashada's neglect was excusable.

"Whether neglect is 'excusable' is an equitable determination that weighs 'all relevant circumstances.'" *Jackson v. Chandler*, 463 F. App'x 511, 513 (6th Cir. 2012) (per curiam). In this circuit, courts account for "(1) the danger of prejudice to the other party, (2) the length of delay, (3) its potential impact on judicial proceedings, (4) the reason for the delay, and (5) whether the movant acted in good faith." *United States v. Jeffery*, 2021 WL 4804685, at *1 (E.D. Mich. Oct. 14, 2021) (quoting *Jinks v. AlliedSignal*, 250 F.3d 381, 386 (6th Cir. 2001)). The reason for the delay is the most important factor. *See United States v. Munoz*, 605 F.3d 359, 372–73 (6th Cir. 2010).

There are two (unpersuasive) ways to fault Mr. Rashada for his missed deadline. First, a factfinder could determine that he should have filed his notice of appeal before he entered observational housing. But Mr. Rashada had no control over his housing change—which prison officials undertook to protect his health—and litigants have no obligation to make their filings weeks in advance of their deadlines. Alternatively, a factfinder could fault Mr. Rashada for returning the signed engagement letter on June 30, 2023, instead of filing a notice of appeal himself at that time. But a movant's tardiness, when induced by attorney communications, supports a finding of excusable neglect. *Cf. Stanfill v. Adams*, 2019 WL 5269167, at *4 (W.D. Ky. Oct. 17, 2019) (finding excusable neglect where an inmate missed his deadline to file a timely notice of appeal because his attorney had mailed the court's order to the wrong address). Accordingly, "[a]ll the *Pioneer* factors weigh in [Mr. Rashada's] favor: there is no apparent prejudice to [Defendants]; the delay in question is less than 30 days; the delay has had little if any impact on the proceedings; [Mr. Rashada] has proffered a legitimate excuse for the delay; and, by all appearances, [he] was acting in good faith." *Jeffery*, 2021 WL 4804685, at *2.

Another untraditional factor at this stage supports a finding of excusable neglect. Litigants are routinely punished for their attorneys' missed deadlines. *See, e.g.*, *Gould v. Bond*, 1 F.4th 583, 588 (8th Cir. 2021) (counsel's "last-minute failure" to provide legal assistant with notice of appeal for filing was not excusable neglect); *Miller v. Mich. Dep't of Corrs.*, 2023 WL 2625807, at *2–3 (E.D. Mich. Mar. 24, 2023) (miscommunication between co-counsel about responsibility for filing notice of appeal was not excusable neglect). Here, by contrast, counsel has been diligent in securing and advancing this representation. The engagement letter was mailed the same day his firm approved the outreach. (*See* Att. 2 at 1; Att. 1 ¶ 5.) He responded courteously to every email from prison employees and never left one of their emails unanswered overnight. (*See* Atts. 3–8.)

7

He even secured a sponsor for a successful application to the Western District's bar in order to facilitate this pro bono representation. (*See* Att. 1 ¶ 8.) And that diligence did not end with this motion's filing. Counsel has already prepared Mr. Rashada's notice of appeal, (*see* Att. 10 at 1), and he intends to file it no later than the first full business day following the potential grant of this motion. By the same reasoning that courts punish parties' whose attorneys fall short, courts should reward parties for securing attentive representation.

At bottom, excusable neglect is "an elastic concept." *See Proctor v. N. Lakes Cmty. Health Ctr.*, 560 F. App'x 453, 459 (6th Cir. 2014). And courts have stretched it to reach circumstances far less sympathetic than Mr. Rashada's. *See, e.g.*, *Mayle v. Illinois*, 956 F.3d 966, 968–70 (7th Cir. 2020) (affirming the district court's grant of a Satanist's motion for extension of time where appellant had a business trip during the week leading up to his deadline); *Marx v. Loral Corp.*, 87 F.3d 1049, 1053–54 (9th Cir. 1996) (affirming the district court's grant of an ERISA class's motion for extension of time where appellants' attorney, who admitted to having miscalculated the applicable deadline, was also delayed in scheduling a pre-appeal meeting his clients).[4] For Mr. Rashada's case, though, the elastic concept need not stretch at all.

## CONCLUSION

In its opinion dismissing Mr. Rashada's claims, this Court considered whether an appeal in this case could be taken in good faith. The Court expressly found that one might be. (*See* ECF No. 7, at 8 ("Accordingly, the Court does not certify that an appeal would not be taken in good faith.").) Retained counsel assures the Court that this one is.

Circumstances outside of Mr. Rashada's control—decisions by prison employees to place him in observational housing, to wait 13 days before advising him of the engagement letter, and

---

[4] *Overruled on unrelated grounds*, *Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) (en banc).

8

to decline seven requests to schedule a call with counsel trying to contact him—prevented him from filing a timely notice of appeal. He had good cause to miss his deadline.

That will be the last deadline he misses in this case. Mr. Rashada respectfully requests that the Court grant his motion.

Dated: July 19, 2023                                                                                          Respectfully submitted,


By: /s/ *Logan L. Page*

Logan L. Page
**WILKINSON STEKLOFF LLP**
2001 M St. N.W.; 10th Floor
Washington, DC 20036
Tel: (202) 847-4026
lpage@wilkinsonstekloff.com

*Counsel for Webster Rashada*